# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ESTATE OF RENARDO GREEN                          :
c/o Co-Personal Representatives
Brittany R. Green, Tiffany R. Green, Jayda A.    :
Green, Phyllis McGowan, and Tracy L.
Naylor                                           :
Anne Arundel County, MD

                                             :

     and

                                             :

BRITTANY R. GREEN                                :    CIVIL ACTION NO. _____
17 Monument Street
Annapolis, MD 21401                              :

                                             :

     and

                                             :

TIFFANY R. GREEN                                 :
1145 Madison Street, Apt S-3
Annapolis, MD 21403                              :

                                             :

     and

                                             :

JAYDA A. GREEN                                   :
6419 Washington Square
Glen Burnie, MD 21061                            :

                                             :

     and

                                             :

PHYLLIS MCGOWAN                                  :
920 President Street, Apt A3
Annapolis, MD 21403                              :

                                             :

     and

                                             :

TRACY L. NAYLOR                                  :
1145 East Madison Street, Apt. A1
Annapolis, MD 21043,                             :

                                             :

     Plaintiffs,

                                             :

     v.

CITY OF ANNAPOLIS (MD)                        :
City of Annapolis Office of Law
D. Michael Lyles, Esquire, City Attorney      :
160 Duke of Gloucester Street
Annapolis, MD 21401                           :
Anne Arundel County

                                              :

        and                                   :

                                              :

SERGEANT MARK COCHRAN
*In his individual capacity*                  :
Badge #3537
c/o Annapolis Police Department               :
199 Taylor Avenue
Annapolis, MD 21401-3496                       :
Anne Arundel County

                                              :

        and                                   :

                                              :

OFFICER MATTHEW BODMER
*In his individual capacity*                  :
Badge Number Unknown
c/o Annapolis Police Department               :
199 Taylor Avenue
Annapolis, MD 21401-3496

                                              :

        and                                   :

OFFICER ANNA WOYTKO                            :
*In her individual capacity*
Badge #6343                                   :
c/o Annapolis Police Department
199 Taylor Avenue                             :
Annapolis, MD 21401-3496

                                              :

        and                                   :

                                              :

OFFICER IVAN SIMINYUK
*In his individual capacity*                  :
Badge Number Unknown
c/o Annapolis Police Department               :
199 Taylor Avenue
Annapolis, MD 21401-3496                       :

and                                              :

THOMAS FRANKHOUSER                               :
*In his individual capacity*
c/o Annapolis Fire Department                    :
1790 Forest Drive
Annapolis, MD 21401                              :

    and                      :

GLENN R. MAKOVSKY                                :
*In his individual capacity*
c/o Annapolis Fire Department                    :
1790 Forest Drive
Annapolis, MD 21401                              :

    and                      :

BRIDGET E. WEISS                                 :
*In her individual capacity*
c/o Annapolis Fire Department                    :
1790 Forest Drive
Annapolis, MD 21401                              :

    and                      :

CALEB M. WARD                                    :
*In his individual capacity*
c/o Annapolis Fire Department                    :
1790 Forest Drive
Annapolis, MD 21401                              :

    and                      :

RYAN M. NORRIS                                   :
*In his individual capacity*
c/o Annapolis Fire Department                    :
1790 Forest Drive
Annapolis, MD 21401,                             :

    Defendants.              :

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Estate of Renardo Green (c/o co-personal representatives Brittany R. Green, Tiffany R. Green, Jayda A. Green, Phyllis McGowan, and Tracy L. Naylor), and Brittany R. Green, Tiffany R. Green, Jayda A. Green, Phyllis McGowan, and Tracy L. Naylor, individually (all hereinafter collectively, "Plaintiffs"), by and through their undersigned attorneys, hereby sue the City of Annapolis, Sergeant Mark Cochran, Officer Matthew Bodmer, Officer Anna Woytko, Officer Ivan Siminyuk, Thomas J. Frankhouser, Glenn R. Makovsky, Bridget E. Weiss, Caleb M. Ward, and Ryan M. Norris (all hereinafter collectively, "Defendants").

In support of their causes of action, Plaintiffs state as follows:

## INTRODUCTION

1.      This case concerns the foreseeable and deadly consequences of an unconstitutional, widely condemned, yet stubbornly persistent practice: prolonged face-down restraint of men and women in custody by police and emergency responders.

2.      This Complaint supersedes all prior complaints that have been filed in this case.

3.      On June 1, 2021, Annapolis Police Department officers and Annapolis Fire Department emergency responders restrained Renardo Green, a helpless, mentally disturbed man, in "protective custody" and then strapped him on a stretcher <u>face-down</u>—grossly negligently, with deliberate indifference, and with fatal consequences, in violation of Renardo Green's constitutional rights.

4.      The link between face-down restraint and sudden death has been nationally known since, at the latest, a 1995 U.S. Department of Justice bulletin that alerted law enforcement to the dangers of this practice.[1]

5.      At the time of Mr. Green's face-down restraint and resulting death, the Maryland Medical Protocols for Emergency Medical Services, promulgated by the Maryland Institute for Emergency Medical Services Systems (hereinafter "MIEMSS Protocols") directed (and still direct) EMS responders, in all caps, as follows:

**"PATIENTS ARE NOT TO BE RESTRAINED IN A FACE-DOWN, HOBBLED, OR HOG-TIED POSITION.[2]"**

**"IF POLICE HANDCUFFED THE PATIENT, JOINTLY WITH POLICE, REPOSITION THE PATIENT IN FACE-UP POSITION WITH HANDS ANTERIOR AND SECURED TO STRETCHER.[3]"**

6.      This prohibition against face-down, hobbled, or hog-tied restraint reflected minimum constitutional standards that applied at the time of Mr. Green's death.

7.      Defendants completely ignored these clear directives, placing Mr. Green face down, while he was handcuffed and secured to two stretchers simultaneously, thereby causing a situation where Mr. Green was unable to breathe.

8.      At the time Mr. Green was killed, the City of Annapolis had no policy that prohibited face-down restraint or warned officers, paramedics, or first responders that face-down restraint was dangerous—notwithstanding well-publicized incidents of in-custody deaths from

---

[1]  *See* U.S. Department of Justice, Positional Asphyxia—Sudden Death (June 1995), *available at* https://www.ojp.gov/pdffiles/posasph.pdf.

[2]  The Maryland Medical Protocols for Emergency Medical Services (2020) at 322, *available at* https://www.miemss.org/home/Portals/0/Docs/Guidelines_Protocols/MD-Medical-Protocols-2020-20200610.pdf?ver=2020-06-12-120333-457.

[3] *Id.*

face-down restraint (such as the murder of George Floyd), and the aforementioned prohibition in the MIEMSS Protocols on face-down restraint due to its risk of serious injury and death. (*See* ¶¶ 5–6, *supra*.)

9.      It was only after this incident that the Annapolis Police Department promulgated a revised use of force policy prohibiting the unconstitutional practice of face-down restraint. Unlike other police departments, at the time Mr. Green was killed, the Annapolis Police Department unconstitutionally condoned face-down restraint as a matter of custom and policy.[4]

10.     The Annapolis Police Department's revised policy, promulgated in June 2022, reads, "Members shall not position a restrained person face-down as it may cause positional asphyxia. In addition, placing persons on their back can cause radial nerve damage to the wrist and forearm area. Restrained persons are to be seated or placed on their side."[5] This policy reflects minimum constitutional standards that applied at the time of Mr. Green's death.

11.     This language mirrors language in the current version of the Baltimore City Police Department's Use of Force Policy (Policy 1115). The Baltimore City Police Department promulgated the current version of the policy well over a year before Mr. Green was killed, on November 24, 2019.[6]

12.     Before this incident, Annapolis Fire Department policies did not (and have never) contained language similar to that now (belatedly) found in the Police Department's use of force

---

[4]    *See*   Use   of   Force   Policy   (March   2021),   *available   at* https://web.archive.org/web/20211210044717/https://www.annapolis.gov/DocumentCenter/View/19269/C3--Use-of-Force-March-2021-PDF.  This outdated version of the policy is still available on the City's website. *See* https://www.annapolis.gov/DocumentCenter/View/19269/C3--Use-of-Force-March-2021-PDF.

[5] *See* https://www.annapolis.gov/DocumentCenter/View/22007/C-03-Use-Of-Force-June-2022-PDF.

[6] *See* https://www.marylandattorneygeneral.gov/Pages/IID/Reports/111822_IID_Report.pdf (page 85 of 95 of pdf file); https://public.powerdms.com/BALTIMOREMD/documents/51042.

policy. Unlike other fire departments, at the time Mr. Green was killed, the Annapolis Fire Department unconstitutionally condoned face-down restraint as a matter of custom and policy.

13.    The Annapolis Fire Department did not train its personnel to avoid face-down restraint or promulgate a policy prohibiting face-down restraint until November 1, 2022. This policy (Policy 7.23, "Patient Care") still does not mention face-down restraint, but simply requires paramedics to follow the MIEMSS Protocols.[7]

14.    Defendants' unconstitutional disregard of minimum constitutional standards reflected in the MIEMSS Protocols, and the City of Annapolis's tolerance of face-down restraint and failure to promulgate and enforce appropriate policies and procedures prohibiting face-down restraint, caused Renardo Green to suffer cardiopulmonary arrest on June 1, 2021, that caused his death. Mr. Green's cardiopulmonary arrest was a direct and proximate result of being restrained in a face-down position while in a state of distress and PCP intoxication, leading to his eventual death on June 4, 2021.

15.    The Maryland Medical Examiner correctly determined Mr. Green's death was a homicide caused by "prone restraint cardiac arrest."

## JURISDICTION AND VENUE

16.    This action is brought under the Constitution of the United States, the Maryland Declaration of Rights, and Maryland tort law.

17.    This case arises from the wrongful death by homicide of Renardo Green (hereinafter "Mr. Green") on June 4, 2021. Mr. Green's death was a direct result of the unlawful acts and mistreatment perpetrated against him by Defendants on June 1, 2021.

---

[7] *See* Policy 7.23, Patient Care, *available at* https://www.annapolis.gov/DocumentCenter/View/16634/723-Patient-Care-Response-and-Transportation-PDF.

18.     The unlawful practices complained of below constituted excessive force under the 4th Amendment to the United States Constitution. These practices also constituted deliberate indifference to Mr. Green's constitutional rights to bodily integrity and his serious medical needs in violation of Mr. Green's right to life and liberty under the substantive due process component of the Fourteenth Amendment to the United States Constitution. They amounted to a state-created danger that killed Mr. Green.

19.     The effect of the practices complained of below was to deprive Mr. Green of his civil rights, which ultimately and foreseeably killed him.

20.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 28 U.S.C. § 1367.

21.     Venue is proper in this Court under 28 U.S.C. § 1391(b).

22.     Although not required, on April 19, 2022, a certified letter giving notice of Plaintiffs' claims was sent to the Annapolis City Attorney, D. Michael Lyles, pursuant to the Local Government Tort Claims Act (Md. Code. Ann., Cts. & Jud. Proc. §§ 5-301 *et. seq.*).

## **PARTIES**

23.     Plaintiffs Brittany R. Green, Tiffany R. Green, Jayda A. Green, and Phyllis McGowan are citizens of the State of Maryland and are domiciled in Anne Arundel County. These Plaintiffs are Renardo Green's children.

24.     Plaintiff Tracy L. Naylor (hereinafter "Plaintiff Naylor") is a citizen of the State of Maryland and is domiciled in Anne Arundel County. Plaintiff Naylor was married to Renardo Green from 2009 until his untimely death by homicide on June 1, 2021, while in the custody of the Annapolis Police Department and Annapolis Fire Department.

25.     Plaintiffs Brittany R. Green, Tiffany R. Green, Jayda A. Green, Phyllis McGowan, and Tracy L. Naylor are hereinafter referred to in this Complaint collectively as the "Individual Plaintiffs".

26.     Plaintiff Estate of Renardo Green has been duly established in Anne Arundel County under the laws of the State of Maryland, with the Individual Plaintiffs as Co-Personal Representatives of the Estate.

27.     Defendant City of Annapolis (hereinafter "City") is a municipality duly incorporated under the laws of the State of Maryland, with its leadership functions under the control and management of the Mayor and Council of the City of Annapolis.

28.     At all relevant times, Defendant City has maintained and controlled the City of Annapolis Police Department as a duly constituted police agency headquartered at 199 Taylor Avenue, Annapolis MD 21401, with powers granted pursuant to the laws of the State of Maryland, the City of Annapolis, and other applicable federal, state, and local laws.

29.     The City of Annapolis Police Department (hereinafter "Annapolis Police Department" or "APD"), through its command structure, was and is responsible for establishing customs, policies, and standing orders controlling the actions of its police officers—including Defendants Sergeant Mark Cochran, Officer Matthew Bodmer, Officer Ivan Siminyuk, and Officer Anna Woytko (hereinafter collectively "Officer Defendants"). The APD is also responsible for providing for their training and supervision regarding the appropriate use of force and restraints and the appropriate treatment of individuals taken into protective custody.

30.     At all relevant times, Defendant City employed Officer Defendants as duly authorized law enforcement officers in the Annapolis Police Department, who all acted at all relevant times within the course and scope of their employment and under color of state law.

31.     At all relevant times, Defendant City has maintained and controlled the Annapolis Fire Department (hereinafter "Annapolis Fire Department" or "AFD") as a duly constituted fire department headquartered at 1790 Forest Drive, Annapolis MD 21401, with power granted pursuant to the laws of the State of Maryland, the City of Annapolis, and other applicable federal, state, and local laws.

32.     At all relevant times, AFD included an Emergency Medical Services (hereinafter "EMS") Division, with the self-described purpose "to provide emergency and non-emergent health care, rescue and related services to the citizens and visitors of the City of Annapolis."[8]

33.     At all relevant times, Defendant City employed paramedics, emergency responders, and other health care workers within AFD's EMS Division, including Defendants Thomas J. Frankhouser, Glenn R. Makovsky, Bridget E. Weiss, Caleb M. Ward, and Ryan M. Norris (hereinafter "AFD Defendants"), to carry out its mission of providing health care, rescue, and related services to the people of Annapolis.

34.      AFD was and is responsible for establishing customs and policies controlling the actions of its personnel, including Defendants Thomas J. Frankhouser, Glenn R. Makovsky, Bridget E. Weiss, Caleb M. Ward, and Ryan M. Norris, as well as providing for their training and supervision regarding the appropriate care and treatment of individuals and patients in its custody or care.

35.     At all relevant times, AFD Defendants were paramedics or other health care-related personnel employed by the City of Annapolis, acting within the course and scope of their

---

[8] *See* Emergency Medical Services, *Annapolis.gov*, https://www.annapolis.gov/355/Emergency-Medical-Services (last visited Jan. 24, 2022).

employment. They are hereinafter sometimes referred to as "paramedics" or "emergency responders."

36.    On June 1, 2021, AFD Defendants responded to Plaintiff Naylor's 911 call to Mr. Green's address and took Mr. Green into custody for purposes of providing care and transport. Plaintiffs are informed and believe and therefore allege that each of these AFD Defendants were acting within the course and scope of their employment with the City and under color of state law when they mistreated Mr. Green in a manner that caused his death.

37.    At all relevant times, a health care provider-patient relationship existed between Mr. Green, AFD Defendants, and Defendant City, including, but not limited to, the AFD, and other agents, ostensible agents, servants, and employees of the Defendants.

38.    At all relevant times, each and every Defendant acted under color of state law.

## FACTUAL CLAIMS

39.    Plaintiffs incorporate paragraphs 1–38 above as if fully set forth herein.

40.    In the early morning hours of June 1, 2021, Plaintiff Naylor called 911 and requested that they respond to her residence out of concern for her husband Mr. Green's safety.

41.    At the time, Mr. Green, a 51-year-old African American man, was suffering from a disturbed and impaired mental state caused by ingestion of PCP. He was bleeding profusely from self-inflicted lacerations caused by broken glass and ceramics. At no time was Mr. Green violent or threatening toward Plaintiff Naylor or any other individual.

42.    At 2:20 AM, Officers Bodmer and Woytko were permitted entry into the Green home. They observed Mr. Green in a delirious state, flailing his legs, yelling "yeah bitch" repeatedly, and otherwise behaving erratically.

43.     At 2:25:55 AM, Officers Bodmer and Siminyuk rolled Mr. Green onto his stomach to handcuff him. At this point and continuously thereafter, Mr. Green was in Defendants' custody. By placing Mr. Green in their "protective custody" without his consent, AFD and Officer Defendants and Defendant City all undertook duties toward and entered a special relationship with Mr. Green by limiting his freedom to act on his own behalf, whereby they assumed an affirmative duty to protect his safety and general well-being as he was wholly dependent on the City and its agents to provide him services and care at all times relevant to this Complaint.

44.     At 2:26 AM, Mr. Green was rolled onto his side.

45.     Plaintiffs do not allege that this time period of less than two minutes that Mr. Green spent on his stomach, for purposes of restraining him for his safety, was a constitutional violation.

46.     At 2:30 AM, Officer Bodmer successfully placed ankle cuffs on Mr. Green.

47.     At 2:32 AM, shackles brought to the scene by Sgt. Cochran were placed on Mr. Green's legs.

48.     The AFD Defendants were at the scene before 2:33 AM.

49.     At 2:33 AM, the AFD Defendants brought a white sheet to the kitchen.

50.     From 2:33-2:34 AM, the AFD Defendants and the Officer Defendants (except for Woytko) forcibly rolled Mr. Green into a prone (face-down) position on the sheet and held him in that position, a grossly negligent act that violated his clearly established constitutional rights.

51.     Placing Mr. Green on his stomach impaired adequate breathing, oxygenation, and blood flow on a continuous, ongoing, and worsening basis, and put him at substantial and foreseeable risk of cardiopulmonary arrest and death. The Defendants caused Mr. Green to remain in a face-down position continuously for the next eleven minutes, from 2:33-2:44, in an ongoing and continuous series of grossly negligent acts and omissions that violated his clearly established

constitutional rights. During this period, the Individual Defendants were not engaged in protecting Mr. Green from an injurious force caused by a member of the public (or even himself), but rather were themselves the injurious force.

52.    Because his arms and legs were shackled, and because he was in a delirious condition, Mr. Green was in a position of helpless peril when placed on his stomach and was unable to roll onto his side where he could breathe adequately.

53.    There was no reason Defendants could not have continued to restrain Mr. Green on his side or restrained him on his back, as his clearly established constitutional rights required.

54.    AFD Defendants did not administer a chemical restraint as required, rather than brute physical force to subdue Mr. Green in a face-down position, in violation of his clearly established constitutional rights.

55.    At 2:36 AM, Officer Bodmer, Siminyuk, Cochran, and the AFD Defendants transported Mr. Green to a soft stretcher, otherwise known as a "scoop stretcher," and placed him face-down on that stretcher, a grossly negligent act that violated his clearly established constitutional rights.

56.    From 2:36-2:37, Cochran forcibly held Mr. Green face down while the AFD Defendants strapped him face-down to two stretchers simultaneously, a grossly negligent act that violated his clearly established constitutional rights.

57.    From 2:36-2:37 AM, the AFD Defendants, assisted by Cochran, forcibly placed and tightened straps over Mr. Green's legs and back while he was face down, a grossly negligent act that violated his clearly established constitutional rights.

58.    At 2:37 AM, the AFD Defendants lifted Mr. Green off the ground and transported him out of the dwelling in a face down position on the scoop stretcher. The sides of the scoop

stretcher squeezed and compressed Mr. Green's body further during this time, which further impaired adequate circulation and respiration. This was a grossly negligent act that violated his clearly established constitutional rights.

59.    From 2:38 to 2:39 AM, the AFD Defendants, assisted by Bodmer, placed Mr. Green and his soft stretcher onto a hard stretcher and forcibly placed and tightened straps over his legs and upper back, which violated his clearly established constitutional rights.  Thus, by this time, Mr. Green was tightly strapped in a face-down position to two separate stretchers at the same time.

60.    By 2:39 AM, Mr. Green's movements became visibly slower. He began lifting his head to breathe because of the difficulty breathing in the face-down position.

61.    Mr. Green was visibly and obviously struggling to raise himself to save his own life, while also struggling to speak.

62.    Instead, as Mr. Green was being wheeled to the ambulance, various EMTs applied pressure to Mr. Green's back when he tried to lift himself.

63.    Thus, before being loaded into the ambulance, Mr. Green was in clear and obvious respiratory distress and at clear and obvious risk of serious injury and death.

64.    Any reasonably trained professional, whether medical or law enforcement, would and should have known at this point that the pressure on Mr. Green's chest needed to be relieved and he needed to be turned onto his side or back. The AFD Defendants and Officer Defendants failed to do so. This grossly negligent omission on the part of all AFD and Officer Defendants violated Mr. Green's clearly established constitutional rights.

65.    At 2:40 AM, Mr. Green was placed in the ambulance by the AFD Defendants and Bodmer. Cochran, who followed Mr. Green out of the residence, was present near the ambulance at the time he was placed in the ambulance.

66.     At 2:41 AM, Mr. Green was motionless and unresponsive to EMS personnel.

67.     From 2:41-2:43 AM, Mr. Green continued to be unresponsive to the AFD Defendants who were calling his name.

68.     Mr. Green was unstrapped and rolled onto his back from 2:44-2:45 AM.

69.     Mr. Green began being bagged at 2:46 AM.

70.     Mr. Green's pulse was checked at 2:47 AM and CPR was started at 2:48 AM.

71.     AFD Defendants delayed in leaving the scene. The ambulance did not arrive at Anne Arundel Medical Center, which was only a fourteen-minute drive from the scene, until 3:13 AM. Mr. Green entered the AAMC Emergency Room at 3:15 AM.

72.     Plaintiff Naylor learned that at approximately 8:00 AM on June 1, 2021, AAMC needed to insert a central line and that Mr. Green had likely suffered brain death.

73.     Because Mr. Green suffered irreversible brain damage due to cardiopulmonary arrest that rendered him clinically brain dead, with no meaningful hope of recovery, his family chose to discontinue life support. Mr. Green died on June 4, 2021.

74.     Upon information and belief, including but not limited to the fact that any reasonable emergency responder would have adhered to the abovementioned fundamental AFD restraint policy if they had been adequately trained and/or supervised on said policy, Defendant City failed, with deliberate indifference to the rights of its citizens, including Mr. Green, to adequately train and supervise Officer and AFD Defendants in the constitutional parameters of restraining a subject who was experiencing a medical emergency.

75.     Specifically, Defendant City failed to ensure and monitor that its emergency responders knew the policy, understood the policy and its medical and legal significance, and were able to effectively discern when and how to abide by the policy.

76.     Mr. Green died as a direct and proximate result of the grossly negligent and unconstitutional acts and omissions of Defendants and their agents. Neither Mr. Green nor Plaintiffs caused or contributed to this outcome.

77.     Defendant Weiss was subsequently charged with misconduct for falsifying a report, which was dismissed on procedural grounds. That decision is currently on appeal.

78.     Upon information and belief, including, but not limited to the fact that any reasonable police officer and emergency responder would have adhered to the constitutional standards reflected in the abovementioned MIEMSS Protocols if they had been adequately trained and/or supervised on those protocols, Defendant City failed, with deliberate indifference to the rights of its citizens, including Mr. Green, to adequately train and supervise the Officer and AFD Defendants to not restrain persons who were experiencing a medical emergency face-down on their stomachs or face-up on their backs. Specifically, Defendant City failed to ensure and monitor that its emergency responders knew and understood this prohibition, committed it to memory, understood the medical and legal significance of this prohibition, and were able to effectively discern when and how to abide by the policy.

79.     Defendant City had actual or constructive knowledge, prior to June 1, 2021, that adequate training of its emergency responders on the constitutional parameters of restraining people experiencing medical emergencies was essential to avoid constitutional violations. Despite Defendant City's actual or constructive knowledge of the obvious necessity of the aforesaid training, Defendant City failed to adequately train Officer and AFD Defendants accordingly, and failed to do so with deliberate indifference to the rights of its citizens, including Mr. Green.

80.    Mr. Green's death was a direct and proximate result of the grossly negligent and unconstitutional conduct of Defendants and their agents as described above. Neither Mr. Green nor Plaintiffs caused or contributed to this outcome.

81.    On September 20, 2021, the Maryland Office of the Chief Medical Examiner (hereinafter "Medical Examiner") reportedly ruled Mr. Green's death a homicide caused by "prone restraint cardiac arrest."[9]

82.    This outcome was not surprising or unusual: as a June 25, 2021, investigative report would find, at least 100 prone-restrained people had died of cardiopulmonary arrest on or before May 24, 2020.[10]

83.    A 1995 Department of Justice bulletin also recognized the dangers of "Positional Asphyxia" in prone-restrained individuals.[11]

84.    This 1995 bulletin specifically advised law enforcement that "[a]s soon as the suspect is handcuffed, get him off his stomach."[12]

85.    On information and belief, Defendant City was aware of this 1995 bulletin years before Mr. Green's fatal encounter with the Defendants.

---

[9] Lilly Price, Annapolis authorities learned more than a month ago of homicide ruling for a man who died after being in police, fire custody, *Baltimore Sun* (Dec. 20, 2021), https://www.baltimoresun.com/maryland/anne-arundel/ac-cn-annapolis-custody-homicide-renardo-green-20211220-n65uuikkarhsde7l7lik2ral7i-story.html.

[10] *See* Chris Vanderveen, PRONE: At least 121 people across the U.S. have died while held prone by officers. Why?, *9News KUSA-TV* (June 25, 2021), https://www.9news.com/article/news/investigations/prone-restraint-police-deaths/73-a4ae192c-ceb6-4815-9e72-2f8a8072765c.

[11] U.S. Department of Justice, National Institute of Justice, Positional Asphyxia—Sudden Death, *National Law Enforcement Technology Center* (June 1995), https://www.ojp.gov/pdffiles/posasph.pdf.

[12] *Id.*

86.     Defendant City was aware of the Medical Examiner's findings regarding the cause and mechanism of Mr. Green's death for at least one month before Defendant City disclosed the Medical Examiner's findings to the public or Mr. Green's family.[13]

87.     At all relevant times, Mr. Green, as a citizen of the United States and the State of Maryland, had clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article 24 of the Maryland Declaration of Rights to be free from excessive force and from the deprivation of his life, liberty, or property, without due process of law, at the hands of state actors. He also had, at all relevant times, clearly established rights to personal security, liberty, dignity, and bodily integrity. These rights were clearly established prior to June 1, 2021, and any reasonable police officer and/or emergency responder knew or should have known of these rights as of that date. No government interest or burden outweighed Mr. Green's aforementioned enumerated and/or clearly established rights. Under Maryland law, public entities, including Defendant City, are directed to pay any tort judgment for which their employees are liable within the scope of their employment.

88.     At all relevant times, the Officer and AFD Defendants were employees of Defendant City acting within the scope of their employment and in accordance with accepted custom and usage when they committed the misconduct described herein.

89.     Accordingly, Defendant City is required by State law to indemnify any and all of the individual Defendants against whom judgment is entered in this case.

---

[13] Lilly Price, Annapolis authorities learned more than a month ago of homicide ruling for a man who died after being in police, fire custody, *Baltimore Sun* (Dec. 20, 2021), https://www.baltimoresun.com/maryland/anne-arundel/ac-cn-annapolis-custody-homicide-renardo-green-20211220-n65uuikkarhsde7l7lik2ral7i-story.html.

90.     All claims and counts below are timely filed within three years after Mr. Green's

death, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-904(g). Although not required given the

nature of this action, Defendant City received tim

91.     ely notice of this claim via a certified letter sent to the Annapolis City Attorney, D.

Michael Lyles, pursuant to the Local Government Tort Claims Act (Md. Code Ann. Cts. Jud. Proc.

§§ 5-301 et seq.) Plaintiffs do not concede that this section applies to limit any remedies or

damages in this action.

## CLAIMS

## COUNT I

**Deprivation of Constitutional Rights – Survival Action**
**42 U.S.C. § 1983 – Excessive Force & Violation of Right to Due Process & Bodily Integrity**
**Pursuant to U.S. Const. Amend. XIV and/or U.S. Const. Amend. IV**

**(Plaintiff Estate of Renardo Green Against AFD and Officer Defendants)**

92.     Plaintiffs incorporate by reference and adopt each and every allegation contained

in paragraphs 1 through 90 above as if fully set forth herein.

93.     At all relevant times, Mr. Green, a citizen of the United States and State of

Maryland, had clearly established rights under the Fourth and Fourteenth Amendments to be free

from excessive force and from the deprivation of his life, liberty, or property, without due process

of law, at the hands of state actors. He also had, at all relevant times, clearly established rights to

personal security, liberty, dignity, and bodily integrity. These rights were clearly established prior

to June 1, 2021, and any reasonable police officer and/or emergency responder knew or should

have known of these rights as of that date.

94.     Section 1983 of Title 42, United States Code, protects individuals from violations of rights guaranteed by the United States Constitution or laws of the United States that were committed by persons acting under color of state authority.

95.     Defendant City is a local municipality organized under the laws of the State of Maryland. At all relevant times, AFD and Officer Defendants were acting as servants, agents, ostensible agents, and/or employees of Defendant City and therefore were acting under color of state law.

96.     AFD and Officer Defendants unlawfully deprived Mr. Green of his rights to life, liberty, personal security, dignity, and bodily integrity, and the right to be free from physical abuse and excessive force at the hands of state actors, when, beginning at 2:34 AM, they, *inter alia*, exerted force upon Mr. Green during the seizure of his person. The Defendants did so by forcibly restraining Mr. Green in a face-down position to two stretchers simultaneously, by manual means and by tight straps that compromised his respiration and circulation, in contravention of clear and longstanding minimal constitutional standards reflected in the MIEMSS Protocols.

97.     AFD and Officer Defendants undertook these egregious acts and omissions despite actual or constructive knowledge that their acts and omissions would (and ultimately did) foreseeably create and/or increase the risk of harm to Mr. Green, thereby causing him serious injury and death.

98.     There was no legitimate governmental justification for AFD and Officer Defendants' conduct; rather, these Defendants' actions were intentional, willful, wanton, reckless, or deliberately indifferent, and constituted an abuse of official power.

99.     By placing Mr. Green in their "protective custody" without his consent, AFD and Officer Defendants and Defendant City undertook duties toward and entered a special relationship

with Mr. Green by limiting his freedom to act on his own behalf, whereby they assumed an affirmative duty to protect his safety and general well-being as he was wholly dependent on the City and its agents to provide him services and care at all times relevant to this Complaint.

100.    The duty assumed by AFD and Officer Defendants and Defendant City goes beyond its duty to the general public.

101.    Mr. Green's injuries were also a result of AFD and Officer Defendants' and Defendant City's affirmative acts.[14]

102.    AFD and Officer Defendants committed these actions with deliberate indifference to Mr. Green's rights to due process of law, bodily integrity, and freedom from excessive force, and did so with reckless disregard for his enumerated rights—by intentionally, wantonly, and willfully increasing the danger to which Mr. Green was exposed.

103.    AFD and Officer Defendants knowingly and intentionally disregarded the real risk of serious injury or death to Mr. Green and were recklessly, callously, and deliberately indifferent to his constitutional rights and amounted to unlawful pre-trial custodial punishment. AFD and Officer Defendants had ample time to deliberate upon their choices and yet acted with reckless disregard and deliberate indifference to Mr. Green's rights.

104.    AFD and Officer Defendants had no need to apply force to Mr. Green by restraining him (manually and through the use of tight straps) in a face-down position from 2:34-2:45 AM on June 1, 2021. There was gross disproportionality between any conceivable need that could be asserted and the amount of force they used in this regard. The force directly and proximately resulted in Mr. Green's death, was not applied in good faith, and amounted to unconscionable

---

[14] *See, e.g., Jones v. State*, 425 Md. 1, 25 (2012) ("[T]he public duty doctrine does not apply if law enforcement is not engaged in protecting the public from an injurious force caused by a member of the public, but rather is itself the alleged injurious force.").

pretrial punishment. Under these circumstances, AFD and Officer Defendants' conduct was unconstitutionally arbitrary and shocks the conscience, constituting force that was brutal and offensive to human dignity.

105.    There was no excuse, justification, or legitimate government purpose—pedagogical, medical, or otherwise—for AFD and Officer Defendants' actions. AFD and Officer Defendants acted willfully, recklessly, and with deliberate indifference.

106.    As described herein, AFD and Officer Defendants' actions were objectively unreasonable and violated Mr. Green's rights to be free from excessive force, to due process of law, and to bodily integrity, including his right to be free from unlawful force physical abuse at the hands of state actors and his rights to personal security, liberty, and dignity.

107.    Prior to June 1, 2021, Mr. Green's constitutional rights were clearly established, and any reasonable emergency responder or police officer knew or should have known of these rights; thus, AFD and Officer Defendants are not entitled to qualified immunity.

108.    AFD and Officer Defendants' violations of Mr. Green's constitutional rights directly and proximately caused him numerous and severe injuries, including but not limited to fright, mental anguish, humiliation, disgrace, loss of dignity, conscious pain and suffering, severe physical injury, and ultimately caused his wrongful death.

109.    As a result of his injuries, Plaintiff Estate of Renardo Green is entitled to compensatory, consequential, special, and punitive damages from AFD and Officer Defendants.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor against AFD and Officer Defendants, jointly and severally, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive

damages, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT II

**Deprivation of Constitutional Rights – Wrongful Death Action**
**42 U.S.C. § 1983 – Excessive Force & Violation of Right to Due Process & Bodily Integrity**
**Pursuant to U.S. Const. Amend. XIV and/or U.S. Const. Amend. IV**

**(Individual Plaintiffs Against AFD and Officer Defendants)**

110.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

111.    Plaintiffs specifically incorporate by reference and adopt paragraphs 93 through 109 *supra* as if fully set forth herein.

112.    As a direct and proximate cause of Mr. Green's wrongful death, the Individual Plaintiffs have suffered and will continue to suffer injuries, including but not limited to emotional distress, pain and suffering, anxiety, and loss of companionship, comfort, protection, care, attention, support, services, advice, counsel, training, society and/or consortium.

113.    As such, the Individual Plaintiffs are entitled to compensatory, economic, consequential, special, and punitive damages from AFD and Officer Defendants.

WHEREFORE, the Individual Plaintiffs demand judgment in their favor against AFD and Officer Defendants, jointly and severally, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT III

**Deprivation of Constitutional Rights (*Monell* Claim) – Survival Action**
**42 U.S.C. § 1983 – Unconstitutional Policy or Custom/Failure to Train & Supervise**

**(Estate of Renardo Green Against Defendant City)**

114.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

115.    Under the United States Constitution, Defendant City is obligated, among other things, to train and supervise its emergency responder employees, officers, agents, ostensible agents, and/or volunteers, in the constitutional parameters of restraining a subject who is experiencing a medical emergency to ensure that the constitutional rights of citizens are not violated.

116.    At all relevant times, Defendant City, directly and through its officers and agents, had an obligation to ensure that its emergency responder employees, police officers, agents, ostensible agents, and/or volunteers, exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situations they would likely encounter in the performance of their conferred official duties with respect to the training, supervision, and oversight of all employees, agents, and officers under its direction and control.

117.    As identified *supra*, the training, supervision, and oversight required of Defendant City to ensure respect for the constitutional rights of a person who is restrained, was inadequate, insufficient, or nonexistent. As such, Defendant City, directly and through its employees, agents, officers, ostensible agents, and/or volunteers, failed to exercise the requisite degree of care in the training and supervision of Officer and AFD Defendants.

118.    At the time of the events giving rise to this action, Defendant City had one or more unconstitutional policies or customs that authorized or permitted face-down restraint of individuals in custody under the same or similar circumstances as Mr. Green.

119.    At the time of the events giving rise to this action, Defendant City had one or more unconstitutional policies or customs that authorized or permitted failing to train, re-train, and supervise its personnel, including APD officers and AFD paramedics and emergency response personnel, to ensure they did not restrain individuals like Mr. Green in the face-down position.

120.    At the time of this incident, Defendant City had no APD policy that prohibited face-down restraint or warned officers of the dangers attendant upon face-down restraint, notwithstanding well-publicized incidents of in-custody deaths from face-down restraint (such as George Floyd) and the prohibition in the MIEMSS Protocols on face-down restraint due to its risk of serious injury and death. (*See* ¶¶ 5–6, *supra*.)

121.    The dangers of face-down restraint were known for at least 25 years before Mr. Green's death.

122.    A 1995 Department of Justice bulletin also recognized the dangers of "Positional Asphyxia" in prone-restrained individuals.[15]

123.    This 1995 bulletin specifically advised law enforcement that "[a]s soon as the suspect is handcuffed, get him off his stomach."[16]

---

[15] U.S. Department of Justice, National Institute of Justice, Positional Asphyxia—Sudden Death, *National Law Enforcement Technology Center* (June 1995), https://www.ojp.gov/pdffiles/posasph.pdf.

[16] *Id.*

124.    And, as noted above, this was not an academic issue. A June 25, 2021, investigative report would find that at least 100 prone-restrained people had died of cardiac arrest on or before May 24, 2020.[17]

125.    However, it was only after Mr. Green was killed that the APD promulgated a revised use of force policy prohibiting the unconstitutional practice of face-down restraint. This prohibition was not in place at the time Mr. Green was killed.[18]

126.    This revised policy, promulgated in June 2022, reads, "Members shall not position a restrained person face-down as it may cause positional asphyxia. In addition, placing persons on their back can cause radial nerve damage to the wrist and forearm area. Restrained persons are to be seated or placed on their side."[19] This policy reflects minimum constitutional standards that applied at the time of Mr. Green's death.

127.    This language mirrors language in the Baltimore City Police Department's Use of Force Policy (Policy 1115), promulgated well over a year earlier, on November 24, 2019.[20]

---

[17] *See* Chris Vanderveen, PRONE: At least 121 people across the U.S. have died while held prone by officers. Why?, *9News KUSA-TV* (June 25, 2021), https://www.9news.com/article/news/investigations/prone-restraint-police-deaths/73-a4ae192c-ceb6-4815-9e72-2f8a8072765c.

[18] *See* Use of Force Policy (March 2021), *available at* https://web.archive.org/web/20211210044717/https://www.annapolis.gov/DocumentCenter/View/19269/C3--Use-of-Force-March-2021-PDF. This outdated version of the policy is still available on the City's website and represented as Police Department policy. *See* https://www.annapolis.gov/DocumentCenter/View/19269/C3--Use-of-Force-March-2021-PDF.

[19] *See* https://www.annapolis.gov/DocumentCenter/View/22007/C-03-Use-Of-Force-June-2022-PDF.

[20] *See* https://www.marylandattorneygeneral.gov/Pages/IID/Reports/111822_IID_Report.pdf (page 85 of 95 of pdf file); https://public.powerdms.com/BALTIMOREMD/documents/51042.

128.    This same language prohibiting face-down restraint is also found in the Pittsburgh Police Department's Use of Force Policy, promulgated nearly one year earlier than Mr. Green died, on June 9, 2020.[21]

129.    Before this incident, AFD policies did not (and have not ever) contained language similar to that now (belatedly) found in the Police Department's use of force policy.

130.    On information and belief, the AFD did not train its personnel regarding avoiding face-down restraint or promulgate a policy relevant to face-down restraint until November 1, 2022. That policy (Policy 7.23, "Patient Care") does not mention face-down restraint, but simply requires paramedics to follow the MIEMSS Protocols, which, as discussed, prohibit face-down restraint.[22]

131.    Despite having actual or constructive knowledge of the obvious need to train and supervise its emergency responders in the restraint of a subject experiencing a medical emergency, Defendant City took no action to remedy its deficient training. It was instead deliberately indifferent to the rights and lives of its citizens, including Mr. Green.

132.    It was readily foreseeable and highly predictable that failing to adequately train and supervise Officer and AFD Defendants in the proper and reasonable restraint of a subject experiencing a medical emergency would (and in fact did) result in the violation of Mr. Green's constitutional rights as alleged herein, and Defendant City was deliberately indifferent to same.

133.    As alleged herein, the actions and omissions by AFD and Officer Defendants were unreasonable, excessive, absent any lawful justification and/or excuse, and were a direct result of Defendant City's failure to adequately train, re-train, supervise, and oversee its employees and/or

---

[21]                *See*                https://cityofplattsburgh.com/sites/cityofplattsburgh.com/files/police-department/GO%20400%20Use%20of%20Physical%20Force%20Deadly%20Physical%20Force%20(updated%206-9-2020)_202006111145415858.pdf.

[22] *See* Policy 7.23, Patient Care, *available at* https://www.annapolis.gov/DocumentCenter/View/16634/723-Patient-Care-Response-and-Transportation-PDF.

its police officers to deal with the same. Defendant City's failure to properly train, re-train, oversee, and supervise its employees and/or its police officers was tantamount to deliberate indifference to the constitutional rights of Mr. Green and all its citizen constituents.

134.    As a direct and proximate result of Defendant City's deliberately indifferent actions and omissions identified herein, including its unconstitutional policies or customs of permitting face-down restraint and not training its personnel to avoid face-down restraint, Mr. Green sustained injuries, including, but not limited to, fright, mental anguish, humiliation, disgrace, loss of dignity, conscious pain and suffering, and physical injury, which ultimately caused his wrongful death. Mr. Green's life and liberty were deprived summarily without due process of law.

135.    Defendant City's unconstitutional policies, customs, acts, and omissions subjected Mr. Green to these deprivations of his rights with deliberate indifference, resulting in his injuries and wrongful death.

136.    As a result of the injuries sustained by Mr. Green and his wrongful death, Plaintiff Estate of Renardo Green is entitled to compensatory, consequential, and special damages from Defendant City.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor against Defendant City, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT IV

**Deprivation of Constitutional Rights (*Monell* Claim) – 42 U.S.C. § 1983 – Unconstitutional Policy or Custom/Failure to Train & Supervise – Wrongful Death Action**

**(Individual Plaintiffs Against Defendant City)**

137.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

138.    Plaintiffs also incorporate by reference and adopt each and every allegation contained in paragraphs 115 through 136, *supra*, as if fully set forth herein.

139.    As a result of Mr. Green's wrongful death that was directly and proximately caused by Defendant City's unconstitutional policies and customs, and deliberately indifferent actions and/or omissions, the Individual Plaintiffs sustained injuries, including but not limited to economic loss, mental anguish, emotional pain and suffering, anxiety, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

140.    As a result of their injuries, the Individual Plaintiffs are entitled to economic, compensatory, consequential, and special damages from Defendant City.

WHEREFORE, the Individual Plaintiffs demand judgment in their favor against Defendant City, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT V

**Conspiracy to Deprive Constitutional Rights and/or Failure to Intervene—42 U.S.C. § 1983 and 42 U.S.C. § 1985 – Survival Action**

**(Estate of Renardo Green Against AFD and Officer Defendants)**

141.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

142.    As alleged *supra*, AFD and Officer Defendants unlawfully and recklessly deprived Mr. Green of his rights to life, liberty, personal security, dignity, and bodily integrity, and the right to be free from physical abuse and excessive force at the hands of state actors, when they, *inter alia*, restrained Mr. Green in a face-down position to two stretchers simultaneously with his hands cuffed behind his back, in contravention of clear and longstanding MIEMSS Protocols, established medical and law enforcement practice, and Mr. Green's clearly established constitutional rights.

143.    As indicated in paragraphs 38–80, *supra,* AFD and Officer Defendants were acting jointly in concert under color of state law when they recklessly violated Mr. Green's constitutional rights.

144.    AFD and Officer Defendants, by their concerted actions, conspired, confederated, and agreed to violate Mr. Green's constitutional rights through their overt acts alleged herein (i.e., restraining and strapping Mr. Green to two stretchers simultaneously in a face-down position), and these overt acts were performed in furtherance of the conspiratorial objective.

145.    AFD and Officer Defendants' joint concerted overt acts caused the deprivation of Mr. Green's rights, as identified herein.

146.    In the alternative, AFD and Officer Defendants, by their concerted actions, conspired and confederated to deprive Mr. Green of his constitutional rights by acquiescing to the actions of their coconspirators by watching them openly breach the law (*i.e.*, by strapping Mr.

Green to two stretchers simultaneously in a face-down position) while doing nothing to seek its prevention, and their actions were objectively unreasonable, reckless, deliberately indifferent, and shock the conscience.

147.    By their overt actions in furtherance of the conspiracy to deprive Mr. Green of his constitutional rights or by acquiescing to their coconspirators overt unlawful acts while actively perpetrating the violation of Mr. Green's constitutional rights and/or failing to intervene, AFD and Officer Defendants shared the same conspiratorial objective.

148.    By their joint and concerted overt actions in furtherance of the conspiratorial objective and/or their acquiescence thereto, AFD and Officer Defendants are liable for the constitutional violations committed against Mr. Green.

149.    AFD and Officer Defendants had a duty to intervene when they observed their coconspirators restrain Mr. Green face-down to multiple stretchers in direct contravention of statewide MIEMSS Protocols, established medical and law enforcement practice, and Mr. Green's clearly established constitutional rights enumerated *supra*.

150.    As evidenced by the fact that AFD and Officer Defendants restrained Mr. Green in a face-down position, and strapped Mr. Green to two stretchers simultaneously in a face-down position in direct contravention of longstanding MIEMSS Protocols for at least <u>eleven minutes</u>, AFD and Officer Defendants had an ample and reasonable opportunity to intervene to prevent the violation of Mr. Green's constitutional rights enumerated *supra*.

151.    Despite their duty to intervene and despite being afforded a reasonable opportunity to intervene, AFD and Officer Defendants, with recklessness and deliberate indifference, declined to intervene to prevent the violation of Mr. Green's constitutional rights enumerated *supra*.

152.    Prior to June 1, 2021, Mr. Green's constitutional rights as enumerated above were clearly established, and any reasonable emergency responder or police officer knew or should have known of these rights; thus, AFD and Officer Defendants are not entitled to qualified immunity.

153.    As a direct and proximate result of the overt acts of the AFD and Officer Defendants in furtherance of the conspiratorial objective to recklessly violate, and/or their reckless failure to intervene to prevent the violation of, Mr. Green's rights as described above, Mr. Green wrongfully endured injuries, including but not limited to fright, mental anguish, humiliation, disgrace, loss of dignity, conscious pain and suffering, and physical injury. This ultimately resulted in his wrongful death.

154.    Mr. Green's life and liberty were deprived summarily without due process of law.

155.    Defendants' acts and omissions subjected Mr. Green to these deprivations of his rights with deliberate indifference, resulting in his injuries and wrongful death.

156.    As a result of the injuries sustained by Mr. Green and his wrongful death, Plaintiff Estate of Renardo Green is entitled to compensatory, consequential, special, and punitive damages from AFD and Officer Defendants.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor against AFD and Officer Defendants, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

<u>**COUNT VI**</u>

**Conspiracy to Deprive Constitutional Rights and/or Failure to Intervene—42 U.S.C. § 1983
and 42 U.S.C. § 1985 – Wrongful Death Action**

**(Estate of Renardo Green Against AFD and Officer Defendants)**

157.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

158.    Plaintiffs also incorporate by reference and adopt each and every allegation contained in paragraphs 142–156 above as if fully set forth herein.

159.    As a direct and proximate result of AFD and Officer Defendants' overt acts in furtherance of the conspiratorial objective to recklessly violate and/or their failure to intervene to prevent the violation of Mr. Green's rights, which caused his unlawful killing, the Individual Plaintiffs sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

160.    The Individual Plaintiffs were and will continue to be severely and irreparably damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual Plaintiffs are entitled to compensatory, consequential, special, and punitive damages.

WHEREFORE, the Individual Plaintiffs demand judgment in their favor against AFD and Officer Defendants, jointly and severally, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

<u>COUNT VII</u>

**Deprivation of Constitutional Rights – Deliberate Indifference to Serious Medical Needs –
42 U.S.C. § 1983 –Pursuant to U.S. Const. Amend. XIV and/or U.S. Const. Amend. IV**

**Survival Action
(Estate of Renardo Green Against All Defendants)**

161.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

162.    The Fourteenth Amendment to the United States Constitution protects the right to be free from any deprivation of life, liberty, or property, without due process of law, at the hands of state actors, and the rights to personal security, liberty, dignity, and bodily integrity. These rights were clearly established prior to June 1, 2021, and any reasonable police officer or emergency responder knew or should have known of these rights as of that date.

163.    In addition, the Fourth Amendment protects the right of an arrestee, such as Mr. Green, to receive constitutionally adequate medical care incident to an arrest and while in custody, among other rights. These rights were clearly established prior to June 1, 2021, and any reasonable police officer or emergency responder knew or should have known of these rights as of that date.

164.    Section 1983 protects individuals from violations of rights protected by the United States Constitution or laws of the United States that were committed by persons acting under color of state authority.

165.    At all relevant times, Mr. Green was put and kept in custody in a condition of helpless peril and in a psychiatrically disabled state.

166.    Each Defendant had a duty to take reasonable steps to provide for Mr. Green's physical health and safety, including his access to appropriate medical care and treatment.

167.     Each Defendant had a duty to ensure that each and every other Defendant was not deliberately indifferent to Mr. Green's serious medical needs when they knew or should have known of those needs.

168.     AFD Defendants, Officer Defendants, and Defendant City had a duty to provide timely and adequate medical care to Mr. Green, who suffered at all relevant times from a serious medical condition known to all Defendants.

169.     AFD and Officer Defendants and Defendant City duties toward Mr. Green exceeded their duties to the general public, as he was in their custody.

170.     Mr. Green's injuries were also a result of AFD and Officer Defendants' and Defendant City's affirmative acts.[23]

171.     Officer Defendants treated Mr. Green as a combative criminal suspect instead of treating him as a person requiring immediate medical care. Officer Defendants immobilized Mr. Green on the ground, face-down, and placed his arms behind his back with two sets of handcuffs and restrained his legs with shackles. Officer Bodmer then provided AFD Defendants with a strap, which was used to restrain Mr. Green to two stretchers simultaneously, and Sergeant Cochran provided AFD Defendants with an additional set of handcuffs, even after Mr. Green was already restrained in a face-down position.

172.     Officer Defendants were deliberately indifferent to Mr. Green's life and safety when they caused Mr. Green to be restrained in a face-down position and then failed to prevent and intervene when AFD Defendants transferred and then restrained Mr. Green in a face-down position to two stretchers simultaneously for an extended period despite known long-standing

---

[23] *See, e.g.*, *Jones v. State*, 425 Md. 1, 25 (2012) ("[T]he public duty doctrine does not apply if law enforcement is not engaged in protecting the public from an injurious force caused by a member of the public, but rather is itself the alleged injurious force.").

protocols prohibiting such restraint because of its dangerous and deadly consequences, and despite obvious signs of distress from Mr. Green.

173.    Officer Defendants were on scene the entirety of the eleven (11) minutes that Mr. Green was immobilized in a face-down position.

174.    Officer Woytko observed Mr. Green strapped down onto two stretchers simultaneously in a face-down position with handcuffs behind his back but did not intervene to prevent AFD Defendants from strapping Mr. Green down, or intervene while Mr. Green remained in that position, despite the known danger to Mr. Green's life and safety.

175.    Officer Siminyuk observed Mr. Green strapped down onto two stretchers simultaneously in a face-down position with handcuffs behind his back but did not intervene to prevent AFD Defendants from strapping Mr. Green down or intervene while Mr. Green remained in that position despite the known danger to Mr. Green's life and safety.

176.    Officer Bodmer helped AFD Defendants transfer Mr. Green in a face-down position to two stretchers simultaneously and handed AFD Defendants a strap, which Officer Bodmer observed AFD Defendants use to fasten Mr. Green to two stretchers simultaneously while he lay face-down with handcuffs behind his back. Officer Bodmer, however, did not intervene to prevent AFD Defendants from strapping Mr. Green down or intervene while Mr. Green remained in that position despite the known danger to Mr. Green's life and safety.

177.    Sergeant Cochran observed Mr. Green being strapped down onto two stretchers simultaneously in a face-down position with handcuffs behind his back but did not intervene to prevent AFD Defendants from strapping Mr. Green down or intervene while Mr. Green remained in that position. Sergeant Cochran merely handed AFD Defendants an additional set of handcuffs

while Mr. Green was immobilized face-down on the stretcher despite the known danger to Mr. Green's life and safety.

178.    Officer Defendants disregarded Mr. Green's incapacitated psychiatric and emotional state by handcuffing his wrists behind his back and shackling his ankles, and then assisting or failing to intervene when Mr. Green was restrained in a face-down position on a stretcher. Under these circumstances, the prolonged and extended use of maximum physical restraint combined with assisting or failing to intervene when Mr. Green was placed in a deadly face-down position on a stretcher—in contravention of established constitutional rights and medical practice—constituted deliberate indifference to serious medical needs.

179.    Officer Defendants' conduct toward Mr. Green was objectively unreasonable under the circumstances.

180.    AFD Defendants disregarded Mr. Green's incapacitated psychiatric and emotional state and failed to treat him as a person requiring immediate medical care. Instead of providing Mr. Green with medical assistance, AFD Defendants endangered Mr. Green's life and safety by leaving him handcuffed and shackled in a face-down position while they strapped him face down onto two stretchers simultaneously, placed additional handcuffs on him, and kept him in a face-down position for eleven (11) minutes. Under these circumstances, the prolonged and extended use of maximum physical restraint, combined with adding additional restraints to Mr. Green after he was already face-down and immobilized, constituted deliberate indifference to a serious medical need.

181.    AFD Defendants' conduct toward Mr. Green was objectively unreasonable under the circumstances.

182.    The deliberate indifference of Officer and AFD Defendants to Mr. Green's serious medical needs shocks the conscience and shows knowledge of the risk of harm and intent to act in a manner that foreseeably and substantially increased the risk of serious harm and death.

183.    Officer and AFD Defendants' deliberate indifference to Mr. Green's serious medical needs directly and proximately caused Mr. Green extreme conscious pain and suffering and severe physical injury and were a direct and proximate cause of Mr. Green's wrongful death.

184.    Defendants knowingly disregarded the real risk of serious injury to Mr. Green and were recklessly, callously, and deliberately indifferent to his constitutional rights.

185.    Defendants' deliberate indifference to Mr. Green's serious medical needs flowed from the Defendant City's unconstitutional customs or polices to permit face-down restraint and to not train officers and first responders to studiously avoid face-down restraint of individuals in the same or similar circumstances as Mr. Green, as noted above.

186.    As a direct and proximate result of AFD and Officer Defendants' overt actions in furtherance of the conspiratorial objective to recklessly violate Mr. Green's rights as described *supra*, and/or their reckless failure to intervene to prevent the violation of Mr. Green's rights as described *supra,* and/or their deliberate indifference to Mr. Green's serious medical needs as described *supra*, Mr. Green wrongfully endured injuries, including but not limited to fright, mental anguish, humiliation, disgrace, loss of dignity, conscious pain and suffering, and physical injury, which ultimately resulted in his wrongful death.

187.    Mr. Green's life and liberty were deprived summarily without due process of law.

188.    Defendants' acts and omissions subjected Mr. Green to these deprivations of his rights with deliberate indifference, resulting in his injuries and wrongful death.

189.    As a result of the injuries sustained by Mr. Green and his wrongful death, Plaintiff Estate of Renardo Green is entitled to compensatory, consequential, and special damages from Defendants, as well as punitive damages from AFD and Officer Defendants.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor against Defendants, jointly and severally, in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against Officer and AFD Defendants, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## <u>COUNT VIII</u>

**Deprivation of Constitutional Rights – Deliberate Indifference to Serious Medical Needs – 42 U.S.C. § 1983 – Pursuant to U.S. Const. Amend. XIV and/or U.S. Const. Amend. IV**

**Wrongful Death Action**
**(Individual Plaintiffs Against All Defendants)**

190.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

191.    Plaintiffs also incorporate by reference and adopt each and every allegation contained in paragraphs 162–189 above as if fully set forth herein.

192.    As a direct and proximate result of Defendants' deliberate indifference to Mr. Green's serious medical needs, which caused his unlawful killing, the Individual Plaintiffs sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

193.    The Individual Plaintiffs were and will continue to be severely and irreparably damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual Plaintiffs are entitled to compensatory, consequential, and special damages from Defendants as well as punitive damages from AFD and Officer Defendants.

WHEREFORE, the Individual Plaintiffs demand judgment in their favor against Defendants, jointly and severally, in in a sum in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against Officer and AFD Defendants, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT IX

**Maryland Declaration of Rights Article 24: Deprivation of Liberty,
Excessive Force & Homicide**

**Survival Action
(Plaintiff Estate of Renardo Green Against All Defendants)**

194.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

195.    At all times relevant to this Complaint, AFD and Officer Defendants were acting under color of state law as officials employed by Defendant City.

196.    At all times relevant to this Complaint, Mr. Green had a protected civil right to liberty, life, and due process under Maryland state law as set forth in Article 24 of the Maryland Declaration of Rights.

197.    By their actions enumerated *supra*, AFD and Officer Defendants deprived Mr. Green of his civil rights to life, liberty, and due process and afforded Mr. Green far less process that he was due.

198.    AFD and Officer Defendants used excessive and unreasonable force against Mr. Green based on the totality of the circumstances then presented when they strapped Mr. Green tightly to two stretchers simultaneously, face down.

199.    AFD and Officer Defendants used force that was purposeful, excessive, objectively unreasonable, absent any lawful justification or excuse, unconstitutional, and unlawful, in restraining Mr. Green on the two stretchers in a face-down position.

200.    AFD and Officer Defendants engaged in purposeful acts of misconduct, including excessive force, even though they knew that valuable and specific procedural safeguards were in place to protect Mr. Green's protected right to life, liberty, and due process.

201.    No government interest or burden outweighed Mr. Green's enumerated and/or clearly established rights.

202.    AFD and Officer Defendants' conduct was without excuse or legal justification and was improperly motivated by recklessness and deliberate indifference to the rights of Mr. Green. Defendants intended, with excessive force and without probable cause, to cause Mr. Green to be strapped tightly to the two stretchers in a face-down position.

203.    Mr. Green did not have the freedom to leave during his detention and seizure.

204.    AFD and Officer Defendants' conduct was objectively unreasonable considering the facts and circumstances then confronting them.

205.    Defendant City is vicariously liable to Plaintiffs for AFD and Officer Defendants' deprivation of Mr. Green's rights under Article 24 of the Maryland Declaration of Rights.

206.     Defendant City also is directly liable for Mr. Green's death, in that it had an affirmative obligation under the Maryland Declaration of Rights to prevent the unconstitutional conduct of employees yet failed to do so, in failing to adequately train and promulgate and enforce policies and procedures to prevent prone restraint, which directly and proximately caused Mr. Green's death.

207.     All Defendants' actions or omissions as described herein were intentional, wanton, willful, and manifested blatant and reckless disregard for Mr. Green's constitutionally protected rights.

208.     As a direct and proximate result of Defendants' actions and omissions identified herein, Mr. Green suffered injuries, including but not limited to fright, mental anguish, humiliation, disgrace, loss of dignity, conscious pain and suffering, and wrongful death. Mr. Green's liberty was summarily deprived by Defendants without the judgment of his peers or by the law of the land.

209.     As a result of the injuries sustained by Mr. Green, Plaintiff Estate of Renardo Green is entitled to compensatory, special, and punitive damages from Defendants.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against Officer and AFD Defendants, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT X

**Maryland Declaration of Rights Article 24: Deprivation of Liberty,
Excessive Force & Homicide**

**Wrongful Death Action
(Individual Plaintiffs Against All Defendants)**

210.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

211.    Plaintiffs also incorporate by reference and adopt each and every allegation contained in paragraphs 195–205.

212.    As a direct and proximate result of Defendants' violations of Mr. Green's rights under Article 24 of the Maryland Declaration of Rights, which caused his unlawful killing, the Individual Plaintiffs sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

213.    The Individual Plaintiffs were and will continue to be severely and irreparably damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual Plaintiffs are entitled to compensatory, consequential, special, and punitive damages.

WHEREFORE, the Individual Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against Officer and AFD Defendants, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT XI

### Battery

### Survival Action
### (Plaintiff Estate of Renardo Green Against Officer and AFD Defendants)

214.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

215.    At all times relevant to this Complaint, Officer and AFD Defendants were acting under color of state law as officers employed by Defendant City.

216.    Defendants assaulted and battered Mr. Green when they unlawfully restrained Mr. Green in a face-down position and unlawfully strapped him in a face-down position to two stretchers simultaneously.

217.    Defendant actions raised in Mr. Green's mind an apprehension of imminent bodily harm when they unlawfully restrained Mr. Green in a face-down position and unlawfully strapped him in a face-down position to two stretchers simultaneously.

218.    Defendants intentionally touched Mr. Green in a harmful or offensive manner when they strapped him in a face-down position to two stretchers simultaneously. Mr. Green did not give Defendants permission to touch him in that or any other manner.

219.    Defendants' conduct was without legal justification and was purposeful. Defendants acted as Defendant City's agents, servants, and/or employees when they assaulted and battered Mr. Green.

220.    Defendants' conduct was committed within the scope of their employment with Defendant City; thus, Defendant City is vicariously liable for the AFD Defendants' and Officer Defendants' grossly negligent acts and omissions with respect to Mr. Green.

221.    As a direct and proximate result of these acts, Mr. Green sustained physical, emotional, and mental injuries, including, but not limited to, conscious pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and loss of life.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against Officer and AFD Defendants, and any other such relief that this Court deems just and proper and further relief as the nature of the case may require.

## COUNT XII

### Battery

### Wrongful Death Action
### (Individual Plaintiffs Against Officer and AFD Defendants)

222.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

223.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 215–221 above.

224.    As a direct and proximate result of Defendants' assault and battery against Mr. Green, which caused his unlawful killing, the Individual Plaintiffs sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

225.    The Individual Plaintiffs were and will continue to be severely and irreparably damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual Plaintiffs are entitled to compensatory, consequential, special, and punitive damages.

WHEREFORE, the Individual Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT XIII

### Negligence and Negligence Per Se

### Survival Action
### (Estate of Renardo Green Against Officer Defendants)

226.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

227.    At all times relevant to this Complaint, Officer Defendants were acting under color of state law.

228.    Officer Defendants undertook and otherwise owed Mr. Green a duty to exercise due care to avoid causing foreseeable physical or mental injuries to him.

229.    Officer Defendants breached their duty to Mr. Green by their actions and inactions noted throughout this Complaint, including those enumerated in paragraphs 1–90, *supra*.

230.    Officer Defendants' negligence proximately caused the injuries that Mr. Green sustained. All of Mr. Green's injuries were caused solely by the negligence of Officer Defendants without any contributory negligence by Mr. Green.

231.    Mr. Green's injuries were also a result of Officer Defendants' affirmative acts.[24]

232.    Defendant City knew or should have known of a dangerous condition—its own failure to train its officers and paramedics, including the Individual Defendants, that prone restraint

---

[24] *See, e.g.*, *Jones v. State*, 425 Md. 1, 25 (2012) ("[T]he public duty doctrine does not apply if law enforcement is not engaged in protecting the public from an injurious force caused by a member of the public, but rather is itself the alleged injurious force.").

was not permissible and posed a danger to individuals like Mr. Green. Despite this knowledge, Defendant City did not act to promulgate and enforce appropriate policies and procedures to ensure individuals like Mr. Green were not subject to prone restraint.

233.    Officer Defendants were also negligent per se in that they violated the aforementioned prohibition against prone restraint in the MIEMSS Protocols, which have the force of law. *See* Md. Code Regs. 30.01.02.01 (eff. Nov. 16, 2020) (adopting the MIEMMS Protocols by reference).

234.    As a direct and proximate result of the aforementioned acts and omissions, Mr. Green sustained physical, emotional, and mental injuries, including, but not limited to, conscious pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and loss of life.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against AFD and Officer Defendants, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT XIV

### Negligence and Negligence Per Se

### Wrongful Death Action
### (Individual Plaintiffs Against Officer Defendants)

235.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

236.    Plaintiffs also incorporate by reference and adopt each and every allegation contained in paragraphs 227–234 above as if fully set forth herein.

237.    As a direct and proximate result of Officer Defendants' and City's negligence/negligence per se with respect to Mr. Green, which caused his unlawful killing, the Individual Plaintiffs sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

238.    The Individual Plaintiffs were and will continue to be severely and irreparably damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual Plaintiffs are entitled to compensatory, consequential, special, and punitive damages.

WHEREFORE, the Individual Plaintiffs demand judgment in each of their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against Officer Defendants, and any other such relief that this Court deems just and proper and further relief as the nature of the case may require.

## COUNT XV

### Gross Negligence

### Survival Action
### (Plaintiff Estate of Renardo Green Against All Defendants)

239.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

240.    At all times relevant, Defendants were acting under color of state law.

241.    By their conduct toward Mr. Green, enumerated *supra*, Defendants engaged in intentional, willful, and wanton misconduct with reckless disregard for the consequences to Mr. Green.

242.    Defendants' gross negligence proximately caused the injuries that Mr. Green sustained. All of Mr. Green's injuries were caused solely by the gross negligence of Defendants without any contributory negligence by Mr. Green.

243.    Defendants' conduct was without legal justification and was improperly motivated by a reckless disregard for the consequences to Mr. Green.

244.    Officer and AFD Defendants' conduct was committed within the scope of their employment with Defendant City; thus, Defendant City is vicariously liable for their grossly negligent and unconstitutional acts and omissions committed against Mr. Green.

245.    Mr. Green's injuries were also a result of AFD and Officer Defendants' and Defendant City's affirmative acts.[25]

246.    As a result of these unlawful acts, Mr. Green sustained physical, emotional, and mental injuries, including, but not limited to, conscious pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, and loss of life.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages against AFD and Officer Defendants, any other such relief that this Court deems just and proper and further relief as the nature of the case may require.

---

[25] *See, e.g.*, *Jones v. State*, 425 Md. 1, 25 (2012) ("[T]he public duty doctrine does not apply if law enforcement is not engaged in protecting the public from an injurious force caused by a member of the public, but rather is itself the alleged injurious force.").

## COUNT XVI

**Gross Negligence**

**Wrongful Death Action**
**(Individual Plaintiffs Against All Defendants)**

247.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

248.    Plaintiffs also incorporate by reference and adopt each and every allegation contained in paragraphs 240–246 above as if fully set forth herein.

249.    As a direct and proximate result of Defendants' gross negligence with respect to Mr. Green, which caused his unlawful killing, the Individual Plaintiffs sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium, loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

250.    The Individual Plaintiffs were and will continue to be severely and irreparably damaged both physically and psychologically, and Mr. Green is dead. As a result, the Individual Plaintiffs are entitled to compensatory, consequential, special, and punitive damages.

WHEREFORE, the Individual Plaintiffs request that this Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus costs and interest, punitive damages, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT XVII

**Wrongful Death**
**(Individual Plaintiffs against All Defendants)**

251.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

252.    Plaintiffs Brittany Green, Tiffany Green, Jayda Green, Phyllis McGowan, and Tracy Naylor are primary beneficiaries in this action pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-904. They have brought this action within the appropriate time limits set forth in the Maryland Wrongful Death Act.

253.    Defendants, as a direct and proximate result of their acts and/or omissions enumerated *supra* (including but not limited to those pled in in paragraphs 1 through 90), wrongfully killed Mr. Green when they strapped him to two stretchers simultaneously in a face-down position in violation of Mr. Green's clearly established constitutional rights on June 1, 2021.

254.    Mr. Green had done nothing to warrant the use of deadly force, and there was no legal justification for Defendants to use such force. Defendants acted with negligence, gross negligence, recklessness, and deliberate indifference to Mr. Green's rights.

255.    Each and every Defendant, individually or through their agents, servants, or employees, was directly and proximately responsible for the homicide of Mr. Green. His death was caused by the actions of the Defendants without any wrongdoing by Mr. Green.

256.    In committing the foregoing acts, Defendants were acting in their official capacity and within the scope of their employment.

257.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiffs Brittany Green, Tiffany Green, Jayda Green, Phyllis McGowan, and Tracy Naylor sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society and/or consortium,

loss of companionship, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of education.

WHEREFORE, the Individual Plaintiffs demand judgment in each of their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus punitive damages against Officer and AFD Defendants, costs and interest, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## COUNT XVIII

### Survival Action
### (Plaintiff Estate of Renardo Green Against All Defendants)

258.    Plaintiffs incorporate by reference and adopt each and every allegation contained in paragraphs 1 through 90 above as if fully set forth herein.

259.    At all times relevant to the allegations herein, Defendants undertook or otherwise owed Mr. Green a duty to use reasonable care.

260.    By each of their acts and omissions enumerated *supra*, Defendants negligently failed to meet their duty of care to Mr. Green and wrongfully killed him when they restrained him on the ground in a face-down position and strapped him to two stretchers simultaneously in a face-down position, against Mr. Green's clearly established constitutional rights as of June 1, 2021.

261.    Mr. Green had done nothing to deserve the use of deadly force, and there was no legal justification for Defendants to use such force. Defendants acted with recklessness and deliberate indifference to Mr. Green's rights.

262.    Each of the Defendants, individually or vicariously through its agents, servants, or employees, was directly and proximately responsible for the homicide of Mr. Green, and his death was caused by the actions of the Defendants without any wrongdoing by Mr. Green.

263.    In committing the foregoing acts, Defendants were acting in their official capacity and within the scope of their employment.

264.    As a direct and proximate result of Defendants' actions or omissions identified herein, Mr. Green sustained injuries, including, but not limited to, fright, mental anguish, humiliation, disgrace, loss of dignity, conscious pain and suffering; and then he died. Mr. Green's liberty was summarily deprived by Defendants without the judgment of his peers or by the law of the land.

WHEREFORE, Plaintiff Estate of Renardo Green demands judgment in its favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 in compensatory damages, specific amount to be determined at trial, plus punitive damages against Officer and AFD Defendants, costs and interest, any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

## REQUEST FOR RELIEF

**WHEREFORE**, as to each and every count pled, Plaintiffs respectfully request that this Court award them:

A. Judgment in favor of each Plaintiff and against Defendants, individually and/or jointly and severally, finding Defendants liable to Plaintiffs;

B. Compensatory damages in an amount of at least $75,000,000.00 (Seventy-Five Million Dollars);

C. Reimbursement of all costs paid by each Plaintiff or on behalf of each Plaintiff in connection with the incident in an amount to be determined at trial;

D. Costs and expenses of this case, including attorneys' fees;

E. Pre-judgment and post-judgment interest;

F.  Punitive damages against Officer and AFD Defendants, in an amount to be determined at trial;

G.  Injunctive relief, including but not limited to mandatory training and re-training of City personnel in the proper care of individuals under the same or similar circumstances as Mr. Green, to prevent what befell him from happening to other Annapolis residents and visitors; and

H.  Any other such relief that this Court deems just and proper, and further relief as the nature of the case may require.

Dated: <u>May 9, 2024</u>                    Respectfully submitted,

By: <u>*/s/ Patrick A. Thronson*</u>
Patrick A. Thronson (Bar No. 18906)
Tara L. Eberly (Bar No. 14239)
Stephen C. Rigg (Bar No. 19891)

JANET, JANET & SUGGS, LLC
Executive Centre at Hooks Lane
4 Reservoir Circle, Suite 200
Baltimore, MD 21208
Telephone: (410) 653-3200
Facsimile: (410) 653-9030
Email: pthronson@jjsjustice.com
Email: teberly@jjsjustice.com
Email: srigg@jjsjustice.com
*Attorneys for Plaintiffs Tracy Naylor and Estate of Renardo Green*

<u>*/s/ Malcolm P. Ruff (with permission)*</u>
William H. Murphy, Jr. (Bar No. 07985)
Malcolm P. Ruff (Bar No. 21595)
MURPHY, FALCON & MURPHY
One South Street, 30th Floor
Baltimore, MD 21202
Telephone: (410) 951-8744
Facsimile: (410) 539-6599
Email: billy.murphy@murphyfalcon.com
Email: malcolm.ruff@murphyfalcon.com
*Attorneys for Plaintiffs Brittany Green, Tiffany*

*Green, Jayda Green, and Estate of Renardo Green*

*/s/ Dwayne A. Brown (with permission)*
Dwayne A. Brown (Bar No. 04724)
LAW OFFICE OF DWAYNE A. BROWN
20 South Charles Street, Suite 400
Baltimore, Maryland 21201
Telephone: (410) 539-6855
Email: dbrown@brownbonner.com
*Attorneys for Plaintiffs Phyllis McGowan and Estate*
*of Renardo Green*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all causes of action and issues set forth in this Complaint that are so triable.

*/s/ Patrick A. Thronson*
Patrick A. Thronson (Bar No. 18906)

/s/ *Malcolm P. Ruff (with permission)*
Malcolm P. Ruff (Bar No. 21595)

*/s/ Dwayne A. Brown (with permission)*
Dwayne A. Brown (Bar No. 04724)